### ROTH v. SMITH et al.

### In re KILLIAN MFG. CO.

#### (Circuit Court of Appeals, Third Circuit. June 5, 1914.)

#### No. 1820.

BANKRUPTCY (§ 140*)—PERSONAL PROPERTY—BANKERS' TITLE—ADVANCES TO PAY FOR GOODS—DELIVERY ON TRUST RECEIPT.

Where a banker's agent, in accordance with custom, furnished credit to importers to purchase silk, taking title in the name of the banker, and after importation the silk, through intermediate transfers, on consignment came to a bankrupt, a corporation engaged in manufacturing silk ribbons, the bankrupt never having paid the consignor, and the banker's advances never having been paid, and it never having transferred its title, the paramount title still remained in it, and it was entitled to recover the silk from the bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. B. McPherson, Judge.

Proceedings in bankruptcy against the Killian Manufacturing Company. From a judgment affirming a referee's order allowing the claim of Smith & Schipper, agents for William Brandt's Sons & Co., bankers, to recover certain silk purchased and delivered to the bankrupt (209 Fed. 498), Claude L. Roth, trustee, appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Henry N. Wessel, of Philadelphia, Pa., for appellant.
Irving L. Ernst, of New York City, for appellees.

Before BUFFINGTON and HUNT, Circuit Judges, and WIT-MER, District Judge.

BUFFINGTON, Circuit Judge. In the present case the silk in question was imported from the Orient by Smith & Schipper, the claimants, who, at the request of the Raw Silk Trading Company, furnished the funds and took title. Subsequently the silks were delivered to the trading company on the trust receipts common in bankers' importations. Through intermediate transfers the silks came, on consignment, to the bankrupt, the Killian Manufacturing Company, a corporation engaged in the manufacture of silk ribbons. The latter company never paid the consignor. The original bankers' advances were never paid, nor have they ever transferred their title to the silks. The referee granted the petition of the claimants praying a delivery to it of the silk. On certificate the court below sustained the referee, holding:

"Unless the case of Century Throwing Co. v. Muller (C. C. A. 3d Circ.) 197 Fed. 252 [116 C. C. A. 614], was wrongly decided, to say nothing of other cases cited by the claimants' counsel, the referee's order was right. I agree with the findings of fact, as well as with the conclusion that the title of the bankers was not transferred, either directly or indirectly. I need not set out again the somewhat complicated facts of the transaction, which began in Japan and passed through several stages, ending in Pennsylvania, with the delivery of the silk on consignment to the bankrupt corporation. Nowhere in the line can I find anything to show that the bankers' title, which in the beginning was undoubted, was ever divested, either by any positive act of their own or by any act of an agent that binds them under the doctrine of estoppel. The papers that were signed within four months of the bankruptcy neither strengthened nor weakened this title. They were properly disregarded by the referee, and need not be considered now. They might have been relevant if the question concerned an attempted preference; but, if this silk did not belong to the bankrupt, there would be no preference in returning it to the real owner, still less in agreeing to return it. In my opinion, the fundamental facts in the controversy are these: The bankers started with the full ownership of this silk, and this ownership has never been lost. The use of trust receipts has become so common in recent years as to lead the courts (which always follow an established business usage sooner or later) to modify in some particulars the stringency of the old rule concerning the effect of divorcing the title and the possession of personal property."

Notwithstanding the argument which seeks to differentiate, we think the case in hand varies in no essential from Century Throwing Co. v. Muller, supra. If the principles there laid down are to prevail, the order of the referee must stand. We adhere to what was there decided, and apply to this case the language there used:

"* * * We see nothing in the evidence in this case that shows any conduct or act on the part of the plaintiffs by which they would be estopped to assert their title and ownership to the goods in question, so far as the same would serve to protect them in respect to the liability incurred by them for the acceptances made in the purchase of such goods. To hold otherwise would be to strike down a bona fide and honest transaction of great commercial benefit and advantage and founded upon a well-recognized custom by which banking credit is efficiently mobilized for manufacturers and importers of small means."